UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD DANIEL GONZALES,<br><br>                Plaintiff,<br><br>   -vs-<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,[1]<br><br>                Defendant. | No.   CV-12-3120-WFN<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Before the Court are cross-Motions for Summary Judgment (ECF Nos. 17 and 20). Attorney D. James Tree represents Plaintiff. Special Assistant United States Attorney Lars Nelson represents Defendant. The Court has reviewed the administrative record and briefs filed by the parties and is fully informed.

**JURISDICTION**

Plaintiff protectively applied for supplemental security income benefits on March 20, 2007, alleging disability beginning on July 1, 2005, due to physical and mental impairments. The application was denied initially and on reconsideration.

A video hearing was held before Administrative Law Judge (ALJ) Marie Palachuk on June 17, 2010. At the hearing, Plaintiff, represented by attorney Chad Hatfield, testified as did Richard A. Hutson, M.D., a medical expert, R. Thomas McKnight, Ph.D., a

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 1

medical expert, and Sharon Welter, a vocational expert (VE). The ALJ concluded that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), this final decision is appealable to the district court. Plaintiff sought judicial review on October 4, 2012.

## FACTS

The facts of the case are set forth in detail in the transcript of the proceedings and are briefly summarized here.

Plaintiff was 36 years old at the time of the hearing. (Tr. at 163.) Plaintiff attended school through 11th grade, but did not graduate from high school. Plaintiff later earned his GED while in prison. Plaintiff has a history of alcohol abuse, marijuana use, and violent crimes. Plaintiff has previously worked as a segregator in cold storage, cook, roofer, custodian, dishwasher, and waiter. (Tr. at 215.) While in prison, Plaintiff worked in the kitchen, did computer refurbishing, and did some barbering.

Plaintiff allegedly suffers from several physical and mental impairments, including nerve impingement of the lower back, arthritis of the right shoulder, anxiety, depression, and obsessive compulsive disorder (OCD). (Tr. at 248, 273, 332.)

Despite his alleged impairments, Plaintiff is still able to do some household chores (Tr. at 249), occasionally go shopping (Tr. at 210), take care of personal hygiene (Tr. at 208), and prepare simple meals (Tr. at 209). Plaintiff can also go on walks and use public transportation. (Tr. at 210.) He likes to read and watch television. (Tr. at 211.)

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his

previous occupation. 20 C.F.R. § 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193-94 (9th 2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(I-v).

## ADMINISTRATIVE DECISION

At step one, the ALJ determined that Plaintiff did not engage is substantial gainful activity since March 20, 2007, the application date.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, lumbar spine and mild osteoarthritis of the left ankle.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments described at 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work subject to some physical and environmental limitations.

At step five, the ALJ concluded that Plaintiff is capable of performing past relevant work as a cleaner/housekeeper or as a "touch up" cleaner.

## STANDARD OF REVIEW

In *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. [*Tackett*, 180 F.3d at 1097]. Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply the proper legal standards in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUES

1. Did the ALJ err in concluding that Plaintiff had past relevant work and that Plaintiff could perform such work?

2. Did the ALJ err in evaluating the medical evidence, including the statements of Plaintiff's treating physicians?

3. Did the ALJ err at step two by finding Plaintiff had no severe mental impairments?

4. Did the ALJ err by failing to complete a separate step five analysis separating the effects of drugs and alcohol from Plaintiff's impairments?

# DISCUSSION

**1. Did the ALJ err in concluding that Plaintiff had past relevant work and that Plaintiff could perform such work?**

Plaintiff argues that, in the last fifteen years, he has never engaged in substantial gainful activity (SGA). Therefore, Plaintiff argues that the ALJ erred by finding that he had past relevant work. Plaintiff also argues that he never worked as a housekeeper and the ALJ erred in finding that Plaintiff had past relevant work as a housekeeper.

Past relevant work is work that a claimant performed within the last 15 years, which was SGA, and lasted long enough for him or her to learn to do it. 20 C.F.R. § 416.965(a). SGA is work activity that is both "substantial" and "gainful." Work activity is "substantial" if it "involves doing significant physical or mental activities," and can include part time work. 20 C.F.R. § 416.972(a). Work activity is "gainful" if done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b).

At step one, the ALJ found that Plaintiff has not engaged in SGA since March 20, 2007, the date of Plaintiff's application. (Tr. at 19.) At step five, the ALJ found that Plaintiff has past relevant work as a cook helper, cleaner/housekeeper, construction worker II, short order cook, stores (laborer), and a touchup cleaner. (Tr. at 28.) Plaintiff argues that this finding was in error because none of this past work rose to the level of SGA. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a) (Work activity can only be "past relevant work" if it was SGA). There is substantial evidence in the record that Plaintiff engaged in these jobs, at least to some extent. *See* Tr. at 66-67, 81, 169, 215-221. Whether Plaintiff engaged in SGA in each of these positions is less clear.

But even if the Court accepted Plaintiff's argument that he did not engage in SGA in these positions, any error made by the ALJ is harmless because the ALJ proceeded to make a step five determination. An ALJ's finding of past relevant work is "significant" when the ALJ combines a claimant's past relevant work with the claimant's RFC to determine that the claimant is not disabled at step four. *Gallegos v. Astrue*, 237 Fed. Appx. 135, *136 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(a)(4)). But when the ALJ

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 5

proceeds to step five after finding relevant past experience, it is immaterial whether claimant's past relevant work was SGA. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless in light of the ALJ's alternative finding at step five."); *Reynolds v. Astrue*, 252 Fed. Appx. 161, *165 (9th Cir. 2007) (ALJ's failure to make specific findings regarding the demands of claimant's past relevant work and claimant's ability to meet those demands was harmless error in light of ALJ's RFC assessment and step-five determination). Any error the ALJ might have made in determining Plaintiff's past relevant work was harmless because the ALJ made a step five determination that was consistent with Plaintiff's RFC.

Plaintiff points out that the ALJ also erred by finding that he had past relevant work as a housekeeper/cleaner. While the ALJ likely erred in this respect, such error is again harmless. Although Plaintiff periodically worked as a custodian, nothing in the record suggests that Plaintiff worked as a cleaner/housekeeper. While these jobs obviously share certain characteristics, the Dictionary of Occupational Titles (DOT) distinguishes between a cleaner/housekeeper and a janitor; the latter being (arguably) a better designation of the work Plaintiff performed as a custodian. The DOT states that "cleaner, housekeeping" is unskilled, light work with a Specific Vocational Preparation (SVP) of 2 (DOT 323.687-014) while work as a "janitor" is semi-skilled, medium work with an SVP of 3 (DOT 382.664-010). Although the ALJ may have mischaracterized Plaintiff's past relevant work, such mischaracterization is harmless because it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Based on the Plaintiff's RFC and the hypothetical the ALJ presented to the VE, the ALJ properly concluded that Plaintiff could perform work as a touchup cleaner or as a cleaner/housekeeper. It is inconsequential to the ultimate nondisability determination that the ALJ characterized Plaintiff's past custodial work as "cleaner/housekeeper."

**2. Did the ALJ err in evaluating the medical evidence in this case, including the statements of Plaintiff's treating physicians?**

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 6

Plaintiff argues that the ALJ erred in considering the medical opinions in this case, particularly the opinions concerning Plaintiff's mental health issues. "In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (quoting *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989)). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

"[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard*, 341 F.3d at 386 (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). An ALJ is not required to discuss evidence that "is neither significant nor probative." *Id*.

### a. Dr. Roger Bracchi

Dr. Bracchi examined Plaintiff on December 31, 2009 and completed a physical evaluation as part of Plaintiff's application for Medicaid through the state agency. (*See* Tr. at 308-11, 315-16, 325-28, 349-51; *see also* Tr. at 267-68 (documenting a January 28, 2008 office visit).) Dr. Bracchi diagnosed Plaintiff with "lumbar disc disease," but found

Plaintiff capable of "sedentary work." (Tr. at 327.) The ALJ gave some weight to Dr. Bracchi's evaluation to the extent that Dr. Bracchi "found the [Plaintiff] capable of work." (Tr. at 27.) The ALJ rejected Dr. Bracchi's opinion that Plaintiff was limited to sedentary work. The ALJ reasoned that this opinion was "not consistent with the objective findings of only mild osteoarthritis and mild degenerative disc disease." (Tr. at 27.) Plaintiff argues that the ALJ erred in dismissing Dr. Bracchi's opinion that Plaintiff was only capable of "sedentary work."

As noted by the ALJ, other medical evidence in the record suggests that Plaintiff's physical impairments do not limit him to sedentary work. Dr. Marie Ho, an examining physician, opined that Plaintiff could stand and walk six hours in an eight-hour day and lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. at 252.) Likewise, Dr. Richard Hudson, the testifying medical expert, opined that Plaintiff's lumbar spine MRI revealed only "mild multi-level degenerative changes." (Tr. at 45.) Dr. Hudson opined that Plaintiff was capable of "light work." (Tr. at 46.) Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and might require "a good deal of walking or standing." 20 C.F.R. § 416.967(b).

Because Drs. Ho and Hudson's opinions contradict Dr. Bracchi's opinion, the ALJ was only required to give "specific and legitimate" reasons for rejecting Dr. Bracchi's "sedentary work" opinion. Plaintiff's MRI revealed only "mild multilevel degenerative changes" in Plaintiff's lumbar spine. (Tr. at 277.) The fact that a medical opinion is inconsistent with objective findings is a legitimate reason for the ALJ to discredit the opinion. *Batson*, 359 F.3d at 1196. Furthermore, the ALJ did not reject all of Dr. Bracchi's opinions; the ALJ specifically rejected Dr. Bracchi's "sedentary work" finding. Where there is conflicting medical evidence, the ALJ, not the Court, must resolve the ambiguities. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ did not err in rejecting Dr. Bracchi's "sedentary work" opinion.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 8

### b. Dr. Jacobo Rivero

Plaintiff argues that the ALJ erred by not mentioning, discussing, or giving reasons for rejecting the opinions of Dr. Rivero. Dr. Rivero was apparently Plaintiff's primary care physician at Central Washington Family Medicine (CWFM). (Tr. at 270.) Although the ALJ does not mention Dr. Rivero by name, the ALJ does summarize and evaluate the CWFM records. (Tr. at 19-20 (citing Ex. 2F [Tr. at 245-47]; 7F [Tr. at 265-77]); 24 (citing Ex. 7F).)

The ALJ summarized Dr. Rivero's report documenting Plaintiff's April 10, 2007 office visit where Plaintiff complained of body aches, chills, cough, diarrhea, and chronic back pain. (Tr. at 19, 246-47). None of these symptoms appear related to Plaintiff's severe degenerative disc disease, osteoarthritis, or his alleged mental disorders. The ALJ also discussed Dr. Rivero's report from Plaintiff's September 12, 2007 office visit where Plaintiff sought treatment for impotence and reported feelings of anxiety and depression. (Tr. at 24, 270-71.) At that office visit, Dr. Rivero noted that Plaintiff had been to the emergency room twice in the past month on account of his anxiety. (Tr. at 270.) Dr. Rivero also noted that Plaintiff had recently been discharged from jail and was upset about had breaking up with his live-in girlfriend. (Tr. at 270-71.) Under the "Comment" heading of his report, Dr. Rivero listed, "Impotence," "Depression," and "Anxiety." (Tr. at 270.)

It is unclear whether Dr. Rivero actually diagnosed Plaintiff with anxiety and depression. Even if the Court accepted that Dr. Rivero did make such diagnoses, other medical evidence in the record contradicts Dr. Rivero's opinion. Dr. R. Thomas McKnight, the testifying psychological expert, opined that Plaintiff's depression and possible adjustment order were temporary and should not last longer than 6 months. (Tr. at 56.) Dr. McKnight also questioned the seriousness of Plaintiff's anxiety by pointing to Plaintiff's self-reports that are "at odds" with diagnoses of anxiety and depression. (Tr. at 57.) Dr. McKnight opined that "there's nothing serious about Plaintiff's anxiety." (Tr. at 58.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 9

In light of Dr. McKnight's opinions, the ALJ was only required to give legitimate and specific reasons for discrediting Dr. Rivero's opinions. In discrediting Dr. Rivero's opinions, the ALJ observed that Plaintiff reported that medication (imipramine) "somewhat helped his mood." (Tr. at 24, 270.)  The ALJ also observed that Dr. Rivero offered Plaintiff counseling, but Plaintiff declined. (Tr. at 24, 271.)  The fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.")  Likewise, a claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" casts doubt on a claimant's sincerity. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Although the ALJ did not mention Dr. Rivero by name, the ALJ properly addressed Dr. Rivero's opinions.

The ALJ does not discuss reports created by Dr. Rivero documenting Plaintiff's office visit on September 10, 2007. (Tr. at 271-72.)  In that report, Dr. Rivero notes that he was seeing Plaintiff as part of a "DSHS Incapacity Exam." (Tr. at 271.)  Dr. Rivero also comments on Plaintiff's history of back pain, observes that Plaintiff suffers from "Lumbalia, chronic and incapacitating," and orders an MRI of Plaintiff's lumbar spine. (Tr. at 271-72.)  Dr. Rivero's observations and recommendation that Plaintiff undergo a MRI are not medical opinions that contradict the ALJ's conclusion that Plaintiff has a severe impairment of degenerative disc disease.  The ALJ is not required to discuss evidence that is "neither significant nor probative." *Howard*, 341 F.3d at 1012.  The ALJ did not err in failing to discuss the record of Plaintiff's September 10, 2007 office visit with Dr. Rivero.

### c.  Dr. Russell Maier

The ALJ also properly evaluated the opinions of CWFM physician, Dr. Maier.  In an August 30, 2007 report, Dr. Maier noted that Plaintiff "present[ed] with acute grief reaction" on account of his breakup with his live-in girlfriend. (Tr. at 272.)  At the time of

the office visit, Plaintiff had not seen his girlfriend, or the three children they were raising, for a week. (Tr. at 272.) Dr. Maier described Plaintiff as "a pleasant, mildly anxious gentleman who becomes tearful at times." (Tr. at 273.) Dr. Maier "[a]ssess[ed]" Plaintiff as having "Adjustment Reaction With Brief Depressive Reaction Adjustment disorder with depressed mood; Grief reaction" and "Depressive Disorder, NEC Depressive disorder NOS; Depressive state NOS; Depression NOS." (Tr. at 273.)

The ALJ's opinion does not explicitly mention Dr. Maier, but the ALJ does reference Dr. Maier's report as it was discussed by Dr. McKnight. (Tr. at 22-23.) The ALJ's opinion references an "August 2007" report concerning the "recent breakup of [Plaintiff's] significant relationship." (Tr. at 23.) The ALJ gave at least two reasons for finding that Plaintiff's anxiety and depression associated with Plaintiff's breakup were not severe mental impairments. First, the ALJ noted Dr. McKnight's contradictory opinion that "sadness" and "adjustment disorder . . . goes away in 6 months or turns into something more interesting." (Tr. at 23; 56.) Second, the ALJ pointed to evidence that indicates Plaintiff exhibits normal behavior, is "capable of independent living activities," and amenable to changes in his environment and supervision in the workplace. (Tr. at 23; 57-58.) To the extent that medical evidence is inconsistent, the ALJ is responsible for resolving ambiguities. *Molina*, 674 F.3d at 1111; *see also Fair*, 885 F.2d at 603 ("[I]t would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent him from working" when the claimant can perform "household chores and other activities that involve many of the same physical tasks as a particular type of job"). The ALJ properly considered Dr. Maier's opinions and gave specific and legitimate reasons for discrediting them.

### d. Dr. Trula Thompson

Plaintiff argues that the ALJ erred because the ALJ did not mention, discuss, or give reasons for rejecting the opinion of Dr. Thompson. Dr. Thompson reviewed Plaintiff's medical records as part of Plaintiff's application for Medicaid through the state agency. (Tr. at 332.) Dr. Thompson did not treat or personally examine Plaintiff. In determining

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 11

whether Plaintiff met state Medicaid requirements, Dr. Thompson summarized the psychological/psychiatric evaluation completed by Mr. Christopher Clark, M.Ed., (Tr. at 334-39), the physical evaluation completed by Dr. Roger Bracchi (Tr. at 325-31), Plaintiff's lumbar spine MRI report (Tr. at 264), and notes documenting Plaintiff's attendance at "group sessions" (presumably associated with Plaintiff's drug treatment). (Tr. at 332.)  Dr. Thompson found Plaintiff disabled and noted that Plaintiff may meet "SSI [Listing] 12.08."[2]  (Tr. at 332.)  As discussed elsewhere in this opinion, the Court finds that the ALJ properly evaluated each of the medical opinions relied upon by Dr. Thompson. The ALJ did not err in failing to discuss Dr. Thompson's opinion to the extent that the opinion simply reviewed records that the ALJ did consider.

Furthermore, the ALJ did not err by failing to discuss or credit Dr. Thompson's equivocal opinion that Plaintiff "may meet SSI [Listing] 12.08."  (Tr. at 332.)  This opinion is conclusory and is not supported by objective medical evidence or by Plaintiff's self-reporting.  Plaintiff points to no medical evidence that he suffers from a personality disorder.  To the contrary, Plaintiff reports that he gets along well with other people and has never been fired from a job because of problems getting along with others.  (Tr. at 213.)  Tellingly, Plaintiff offers no theory, "plausible or otherwise," as to how his impairments actually combine to meet the criteria of a personality disorder under Listing 12.08.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  The ALJ was not required to discuss or credit Dr. Thompson's "listing" opinion because it was "neither significant nor probative."  *Howard*, 341 F.3d at 386.

Plaintiff also argues Dr. Thompson's opinion should have been given substantial weight because a state agency adopted Dr. Thompson's disability determination for

---

[2]Listing 12.08 sets forth the criteria to find that a claimant has a personality disorder: "A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupation functioning or subjective distress." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.08.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 12

purposes of finding Plaintiff eligible for GAX and Medicaid. (ECF No. 17 at 12-13.) Plaintiff analogizes Washington's Medicaid and GAX disability determinations to the Department of Veterans Affairs' (VA) disability decisions. Generally, "a VA rating of disability does not . . . compel the [Social Security Administration] to reach an identical result, [but] the ALJ must consider the VA's finding in reaching his decision and the ALJ must ordinarily give great weight to a VA determination of disability." *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011). Plaintiff fails to cite to any authority requiring the Court to treat state agency disability determinations the same as VA disability determinations. In absence of such authority, the Court finds controlling 20 C.F.R. § 416.904, which states that disability determinations made by other governmental agencies are "not binding" on the ALJ.

### e. Dr. Gregory Wright

Plaintiff argues that the ALJ erred because the ALJ did not mention, discuss, or give reasons for rejecting the opinion of Dr. Wright. Plaintiff argues that Dr. Wright diagnosed Plaintiff with anxiety, adjustment disorder with depressed mood, and depressive disorder. ECF No. 17 at 15 (citing Tr. at 353). But, as pointed out by Defendant, the record created by Dr. Wright was not before the ALJ. (ECF No. 20 at 9.) Rather, the Plaintiff submitted Dr. Wright's record directly to the Appeals Council after the ALJ's decision. (*Compare* Tr. at 4 *with* Tr. at 33.) The district court must consider new evidence submitted to the Appeals Council when reviewing the Commissioner's final decision for substantial evidence. *Brewes v. Comm'r, Soc. Sec. Admin*, 682 F.3d 1157, 1163 (9th Cir. 2012).

The Court finds that Dr. Wright's "diagnoses" do not constitute substantial evidence that would support a finding that Plaintiff suffers from severe mental impairments, which appears to be what Plaintiff is arguing. Plaintiff saw Dr. Wright on January 12, 2010 to address his complaint of lower back pain. Under the subheading, "Temporary Problems," Dr. Wright lists diagnoses of anxiety and depression. (Tr. at 353.) The "mere diagnosis of an impairment," however, is "not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Dr. Wright gives no opinion as to the

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 13

severity or possible duration of Plaintiff's mental impairments or how these impairments would limit Plaintiff's ability to work. The Court, like the ALJ, may reject medical opinions that are "conclusory, brief, and unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. Dr. Wright's diagnoses do not constitute substantial evidence requiring the Court to find that the Plaintiff has severe mental impairments.

### 3. Did the ALJ err at step two by finding there were no severe mental impairments?

Plaintiff argues that, due to the ALJ's erroneous evaluation of the medical evidence, the ALJ improperly concluded that Plaintiff did not suffer from severe mental impairments. Specifically, Plaintiff argues that the ALJ gave insufficient reasons to reject the opinion of therapist Christopher Clark when she concluded that Mr. Clark's opinions "contrast[ed] sharply with the other evidence of the record." (Tr. at 27.) Plaintiff argues that Mr. Clark's diagnosis is, in fact, consistent with the weight of the evidence.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotation marks omitted).

As discussed above, Dr. Rivero, Dr. Maier, and Dr. Wright each found that Plaintiff suffered some degree of depression and anxiety. The ALJ gave little weight to these opinions for various legitimate and specific reasons. Plaintiff points out that Dr. Dana Harmon also opined that Plaintiff has "serious mental health difficulties." (Tr. at 324.) Despite making such a finding, however, Dr. Harmon, ultimately denied Plaintiff's certification for Medicaid. (Tr. at 324.) Dr. Harmon recommended that, if Plaintiff were to reapply, he should provide "documentation that he has continued to be disabled by his

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 14

mental health difficulties." (Tr. at 324.) Neither Dr. Harmon nor any of the other physicians discussed in this opinion concluded that Plaintiff's mental impairments precluded Plaintiff from performing basic work activities or that Plaintiff's mental impairments had more than a minimal effect on Plaintiff's ability to work. In the absence of such medical evidence, the Court finds that Plaintiff has not met his burden of proving that his mental impairments constitute severe impairments. *Tackett*, 180 F.3d at 1098-99.

Plaintiff argues that the ALJ erred in evaluating the opinion of Mr. Christopher Clark, the therapist who conducted Plaintiff's psychiatric exam as part of Plaintiff's application for Medicaid benefits. Mr. Clark observed Plaintiff as having symptoms of anxiety, paranoia, and obsessive thinking that had a "marked" effect on his ability to work. (Tr. at 297.) Mr. Clark went on to diagnose Plaintiff with "Obsessive Compulsive Disorder," "Alcohol Dependence, in reported remission," and "Cannabis Dependence, [in] reported remission." (Tr. at 299.) Mr. Clark did not diagnose any other mental disorders but did note that Plaintiff presented "antisocial [and] avoidant features." (Tr. at 299.) Mr. Clark concluded that Plaintiff's mental impairments resulted in several severe and marked functional limitations on his ability to perform day-to-day tasks. (Tr. at 300.)

The ALJ rejected Mr. Clark's opinions because they "contrast[ed] sharply with the other evidence of record." (Tr. at 27.) Mr. Clark, a therapist, is an "other source." 20 C.F.R. § 416.913(d)(1). "The ALJ may discount testimony from . . . 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111. Although it is true that several physicians diagnosed, or noted symptoms of, depression and anxiety, *not one* physician opined that Plaintiff's mental impairments caused the degree of functional limitation found by Mr. Clark. Furthermore, as noted by the ALJ, Mr. Clark's diagnosis of OCD is unsupported by any objective medical evidence or other evidence in the record. (Tr. at 27-28.) The Court agrees with the ALJ that Mr. Clark's opinions concerning Plaintiff's functional limitations are inconsistent with the great weight of medical evidence in the record. Inconsistency with medical evidence is a germane reason to discredit other source testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th

Cir. 2005).  The ALJ did not err in rejecting Mr. Clark's opinions and did not err in finding Plaintiff's mental impairments not severe.

**4.  Did the ALJ err by failing to complete a separate step five analysis separating the effects of drugs and alcohol from Plaintiff's impairments?**

The ALJ declined to address "the materiality of drug and alcohol abuse" because the ALJ found that Plaintiff did not have any severe mental impairments. (Tr. at 24.)  Plaintiff argues that the ALJ erred by failing to find that Plaintiff has a drug and alcohol addiction (DAA) and by failing to conduct an alternate step five analysis to determine whether Plaintiff's DAA materially contributed to his disability.

Generally, the Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001). A claimant has the burden of showing that DAA is not a contributing factor material to disability.  *Ball v. Massanari,* 254 F.3d 817, 823 (9th Cir.2001).  If there is evidence from an acceptable medical source that Plaintiff has a substance abuse disorder and the claimant succeeds in proving disability, the Commissioner must determine whether DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 & 416.935; SSR 132p (Feb. 20, 2013), *available at* 2013 WL 621536.  Conversely, if an ALJ finds that the claimant is *not* disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability.

Plaintiff's argument is flawed because it is based on the assumption that the ALJ erred by not finding Plaintiff disabled and not suffering from severe mental impairments. But as discussed above, the ALJ did not err in either of these respects.  Because the ALJ's conclusion of nondisability is supported by substantial evidence and free from legal error, the ALJ was not required to make alternate findings to determine whether Plaintiff would be disabled if he stopped using drugs and alcohol.  The ALJ did not err by not making an alternate step five determination regarding the materiality of DAA.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error. Accordingly

**IT IS ORDERED** that:

1. Defendant's Motion for Summary Judgment, filed July 1, 2013, **ECF No. 20**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, filed May 20, 2013, **ECF No. 17**, is **DENIED**.

The District Court Executive is directed to file this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** this 23 day of January, 2014.

01-08-14

s/ Wm. Fremming Nielsen
WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 17